## ANDERSON v. ATLANTIC COAST LINE R. R. CO.

1. RAILROADS—CATTLE GUARDS OR GAPS.—Where a land owner by *fee simple* deed conveys a strip of land to a railroad company, on which it locates its road, he cannot require it, under Rev. Stat., 1729 and 1730, to construct and keep in repair cattle guards or gaps on his line of fence crossed by such road.

2. DEED—WORDS AND PHRASES.—The words in this deed, "and the undersigned to fix up pasture fences," are ambiguous and impose no duty on defendant, but imply contrary.

3. CASES DISTINGUISHED.—*St. Louis R. R. Co.* v. *Morris*, 35 Ark., 622; *Poler* v. *N. Y. Central R. R. Co.*, 16 N. Y., 476; *Missouri R. R. Co.*

v. *Morrow*, 32 Kan., 217; *Heskett* v. *Wabash R. R. Co.*, 61 Iowa, 467, *distinguished from this.*

Before TOWNSEND, J., Barnwell, November, 1899. Affirmed.

. Action by H. P. Anderson against Atlantic Coast Line R. R. Co. for statutory penalty for not maintaining cattle guards on his lines of pasture fences. The following is the deed under which the defendant claims the land on which its road is located, omitting formal parts:

"Know all men by these presents, That we, H. P. Anderson and Mrs. Emma D. Anderson, of Barnwell County and State of South Carolina, in consideration of the benefits expected to be derived from the building of its proposed railroad and the sum of $100 to us paid by the Atlantic Coast Line Railroad Company of South Carolina, a corporation created and organized under the laws of said State, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release unto the said Atlantic Coast Line Railroad Company of South Carolina, all that piece, parcel or strip of land lying, being and situate in the county of Barnwell, State aforesaid, the same being 130 feet wide and 2,573 feet long, more or less, extending through and across my lands in said county, the exact location to be determined by the said company. Together with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging, or in anywise incident or appertaining; said strip of land is bounded on the east by Lower Three Runs and the lands of Dr. Allen Patterson, and on the west by lands of Richard Cave; and the undersigned to fix up the pasture fences. To have and to hold all and singular the premises before mentioned unto the said Atlantic Coast Line Railroad Company of South Carolina, its successors and assigns forever. And we do hereby bind ourselves, heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Atlantic Coast Line Railroad Company of

South Carolina, its successors and assigns, against us and our heirs, and all other persons lawfully claiming, or to claim, the same or any part thereof."

The Judge charged the jury as follows, omitting such parts of the requests as are not in question by the exceptions:
"The plaintiff in this action brings this action for the purpose of recovering what's been termed a penalty for the violation of a duty, as alleged against the railroad company. Under this statute, you have heard it read several times, and I read it to you as a part of my charge.    (Reads secs. 1729 and 1730.)    That statute is imperative in its terms against the railroad companies.    No doubt about the terms of it unless the owner of the fence lines or the fence on the line release the railroad company.    My attention has been called in this case to this paper, which purports to be, and is, a deed from H. P. Anderson and Emma D. Anderson to the Atlantic Coast Line Railway Company of South Carolina.    It is a deed to a strip of land 130 feet wide and 2,573 feet long, more or less, in fee simple, it is a sale out and out, just as any one would sell.    It is the form, as our statute says, to convey title; it is not the right of way to the railroad company, but it is one of the title to the land, that does convey the title in fee simple, and Mrs. Anderson, according to the terms here, renounced her dower, and by the terms of that writing the title passed to the railroad company, and that carried the responsibility to maintain cattle guards, unless there was, as I said, an agreement outside to release the railroad company.    We have condemnation laws and we have modes of obtaining rights of way.    Condemnation does not mean a right to the land, it is a right to pass over the land. The State passes it by what is called its right of eminent domain to go through land, and when they undertake to get that they must get the right of way—not the land, necessarily, but the right to pass, under what we call an easement to construct tracks, to construct side tracks and depots and all structures necessary to run that railroad; that's what an

easement is, that's what it means.     Now, if they buy the fee
simple to the land, it is a different thing; they own it and
they can sell it.     Where simply the right of way is given or
leased to them, released, just simply an easement—no doubt
about where they condemn the land or get an ordinary lease,
or release, I don't know which it is termed, but you know
what I mean, it is called either, I believe—where they get an
ordinary lease to build it is their duty to build, ordinarily to
build cattle guards, stock guards or cattle gaps, that's im-
perative, they must fix up the cattle gap or stock guard so
that cattle can't get into your field.     And as I take it, the
fence line or line of fence owner would be entitled to recover
for every fence or line of fence crossed.     Suppose the rail-
road bought 10,000 acres and it crossed fifty fences, I charge
you they are not bound to construct stock guards there, on
their own land; the legislature don't mean that, that they are
to construct stock guards on their own land, unless there are
other circumstances in the case that there is an implied un-
derstanding or a direct understanding that they are to sus-
tain to each other, the company and the owner, the same
relationship as if it was condemned, then it would be to con-
struct cattle guards, I charge you that this don't mean that.
I know that counsel for plaintiff quoted authority in a Mis-
souri case—and that's law in that State—and generally on
statutes something like this it has been so held, that's why
the court of last resort said it makes no difference whether
they owned a fee or an easement, and we can't be governed
by the decisions of other States; if counsel said he read the
statute and it was like ours, that's sufficient.     Did the de-
fendant company purchase the fee simple title?     If so, it is
his land and fences.     So far as the terms of this deed is
concerned, there is nothing for that here.     I don't—I merely
speak of it—I don't say it is in evidence.     I can't speak of
anything in evidence.     If I did, I could explain the law much
easier.     Then again, so far as the evidence goes, did the
circumstances show that the defendant owned property
around there?     How did the parties trade?     Do the circum-

23—59

stances show the relation was to remain the same as if the owner conveyed the fee simple, or the same as if he had conveyed only an easement? If the circumstances showed that, then they are bound to put in the cattle guard; if they did not, then they are not bound to do it. That's my construction of the statute. Then the question arises, when must they construct the cattle guard? My understanding is, the spirit of the statute is, that they must do it in a reasonable time. They must do it when they build the road, it is a part of the road, or as soon as it can be done in reason; they can't do it by electricity, they must do it in a reasonable time, and the jury must say what is a reasonable time. And after that reasonable time has passed, an action may be brought. I don't know if you understand all that, if you become confused, come out and ask about it.

"Now, so far as the requests to charge. First, the defendant requests this: 'That the deed of the plaintiff and wife to the defendant company, conveying, as it does, a fee simple title to the land in question, and not a mere right of way, there is no obligation upon the defendant to construct cattle guards upon the said land.' I charge you that, unless you find, as I have said, that from all the facts and circumstances there was an understanding between them that the defendant was not to take advantage of his possession of fee simple title, if you find he bought it; but the relation between the plaintiff and defendant was to be as if only an easement was granted. II. 'That the statute under which this action is brought requires that there shall not only be a fence, where the railroad crosses, but that the plaintiff in the action shall be the owner of such fence, and the plaintiff cannot be the owner of a fence upon the defendant's land.' I charge you that, with the same qualification that I have added to the other request. If you find that the plaintiff and defendant had an understanding between them, if there is anything to show it—that the plaintiff was to maintain his line across there and the defendant relinquished any right he might

have, if he bought such a title—then I charge you that's the law, that this request is the law. * * *

"The plaintiff's requests, coming last, are as follows : * * *

"II. That the term 'cattle guard,' as used in the statute, has a legal meaning, and is defined to mean "such an appliance as will prevent animals from going upon the land adjoining the right of way;" that a mere pit under the track is not sufficient, but the appliance must extend to the outer limit of the right of way ; and if the jury find from the preponderance of the evidence, that the defendant's railroad crossed the line of plaintiff's fence, in one or more places, and that the railroad company has failed to construct cattle guards such as already defined, then your verdict should be for the plaintiff.'  Well, in the first place, cattle guard is not used in the statute at all, I might refuse the request on that ground.  The statute says—

"Mr. Izlar : I didn't have the statute before me, I will substitute the words in the statute.

"The Court: I don't care to be so particular as that; I have said already that I consider cattle guard has a legal meaning, I consider that it says in the statute stock guard or cattle pit ; I think that has a legal meaning as stated here, and that it means such an appliance as will prevent animals from going upon the land adjoining the right of way.  I think that, under our statute, it is not bound to extend to the outer edge of the right of way, but only so far as is necessary for its trains to pass, or rather for the land owner to bring his fences up to allow the trains to pass, bring up his fences on each side of the rail, the iron, as will be safe; he mustn't bring it up to the iron, because the owner can't come up to the track, the iron ; therefore, they must go far enough to make it safe.  But I do not think it is the law in our State to go all the way across the whole hundred and thirty feet, or whatever it may be.  We are bound to use the rule of common sense, as counsel invoked.  With that qualification, I charge you that. * * *"

From verdict and judgment for defendant, plaintiff appeals on the following grounds:

"1st. That the Circuit Judge, Hon. D. A. Townsend, erred in holding, and so charged the jury at the trial of said cause, that where the railroad company acquires a right of way through the lands of the owner, by purchase and conveyance in fee simple, and not by condemnation proceedings under the statute, it is is not bound to construct and keep in repair an adequate stock guard or cattle gap at every point where the line of such railroad crosses the line of any fence of the land owner executing such conveyances, unless there was an understanding, expressed or implied, that the land owner and the railroad company shall sustain the same relationship as if the said right of way had been condemned; whereas, he should have charged, that the language of the statute being imperative, it made no difference whether the right of way was acquired by purchase and conveyance or by condemnation, whether a fee simple or an easement, the railroad company was bound to construct and keep in repair an adequate stock guard or cattle gap at any point where the line of the railroad crosses the line of any fence in the State; and failing so to do, it would be liable to pay to owner or to the owners of the fence upon the line of which such stock guard or cattle gap should have been constructed and kept in repair, the sum of $100 to be recovered by action in the Court of Common Pleas for the county in which such stock guard or cattle gap should have been constructed and kept in repair.

"2d. That the Circuit Judge erred in his interpretation of the statute in regard to the construction and repair of stock guards and cattle gaps, by holding that the statute only applies in cases where the railroad company acquires the right of way by condemnation, and not where it acquires the right of way by conveyance and purchase in fee, and in charging the jury that there is a difference under the statute, whether the railroad company owns the fee in the right of way, or only an easement, as to its liability.

"3d. That the Circuit Judge erred in his construction of the statute and in his charging the jury as follows: 'How did the parties trade?   Do the circumstances show that the relation was to remain the same as if the owner conveyed the fee simple, or the same as if he had conveyed only an easement?   If the circumstances showed that, then they are bound to put in the cattle guard; if they did not, then they are not bound to do it.   That's my construction of the statute.' Whereas, he should have construed the statute as applying in all cases, whether the right of way was acquired by conveyance in fee simple or by condemnation proceedings, and only amounted to an easement, and should have so charged the jury.

"4th. That the Circuit Judge erred in charging the defendant's first request: 'That the deed of the plaintiff and wife to the defendant company, conveying as it does a fee simple title to the land in question and not a mere right of way, there is no obligation upon the defendant to construct cattle guards upon said lands, even when modified as follows: I charge you that, unless you find, as I have said, that from all the facts and circumstances, there was an understanding between them, that the defendant was not to take advantage of his possession of the fee simple title, if you find he bought it; but the relation between the plaintiff and the defendant was to be as if only an easement was granted. Whereas, he should have charged that the obligation upon the defendant to construct stock guards or cattle gaps, under the statute, was the same whether the defendant acquired a fee simple in the right of way, under the deed or only as an easement therein.

"5th. That the Circuit Judge erred in charging the second request of the defendant even as modified, the same being as follows: 'That the statute under which this action is brought requires that there shall not only be a fence where the railroad crosses, but the plaintiff in the action shall be the owner of the fence, and the plaintiff cannot be an owner of the fence upon the defendant's land.   I charge you with the

same qualification that I have added to the other request.
If you find that the plaintiff and the defendant had an under-
standing between them, if there is anything to show it, that
the plaintiff was to maintain his line across there and the
defendant relinquished any right he might have, if he
bought such a title, then I charge you that's the law, that
this request is the law.'    The said proposition of law being
unsound even as modified, and was calculated to mislead the
jury, as to a true construction of the statute.

"6th. That the Circuit Judge erred in not charging the
plaintiff's second request, as follows: 'That the term "cattle
guard," as used in the statute, has a legal meaning, and is
defined to mean such appliance as will prevent animals from
going upon the land adjoining the right of way; that a mere
pit under the track is not sufficient, but that the appliance
must extend to the outer limit of the right of way; and if the
jury find from the preponderance of the evidence that the
defendant's railroad crossed the line of the plaintiff's fence,
in one or more places, and that the railroad has failed to con-
struct cattle guards, such as already defined, then your ver-
dict should be for the plaintiff.'    And in charging the jury
thereon as follows: 'I have said already that I considered
cattle guard has a legal meaning, I consider that it says in
the statute, stock guard or cattle pit; I think that has a legal
meaning, as stated here, and that it means, such an appliance
as will prevent animals from going upon the land adjoining
the right of way.    I think that, under our statute, it is not
bound to extend to the outer edge of the right of way, but so
far as it is necessary for its trains to pass, or rather for the
land owner to bring his fence up to allow the train to pass,
bring up his fences on each side of the rail, or the iron, as
will be safe; he must not bring it up to the iron, because the
owner cannot come up to the track, the iron; therefore, he
must go far enough to make it safe.    But I do not think it
is the law in our State to go all the way across the whole one
hundred and thirty feet, or one hundred feet, or whatever
it may be, we are bound to use the rule of common sense, as

counsel invoked, with that qualification, I charge you that.'

"7th. That the Circuit Judge erred in holding that no liability attached to railroad companies for a violation of the provisions of sections 1729 and 1730 of the Revised Statutes of 1893, in regard to the stock guards and cattle gaps, where the railroad company acquired its right of way by grant or conveyance in fee simple, but only where such right of way is acquired by condemnation proceedings, and that there is a difference, under the statute whether the railroad company holds the fee, or only an easement, in the right of way, as to the liability of railroad companies, in failing to construct adequate stock guards or cattle gaps at every point where the line of their railroad crosses, or may hereafter cross the line of any fence in this State; and that where the railroad company holds the fee in the right of way, they are not bound to construct and maintain stock guards and cattle gaps unless there is an understanding between the land owner and the railroad company, that the railroad company should do so; such construction of the statute being not only unsound and erroneous, but contrary to the true intent and meaning of the makers and framers of the statute."

*Messrs. John E. Allen* and *Izlar Bros.,* for appellant. The latter cite: *Nothing in the statute which limits it to cases of easement:* 23 S. C., 550.  *And it applies in cases of absolute deeds:* 16 N. Y., 476; 18 Barb., 350; B. Mon. (Ky.), 218; 63 N. Y., 58; 35 Ark., 622.  *What is cattle guard?* 32 Kan., 217; 61 Iowa, 467.

*Mr. Robert Aldrich,* contra, cites: *The case in 32 Kan., 217, applies to an easement.  Easement defined:* 18 N. Y., 109.  *One conveying land by fee simple deed cannot be the owner:* 33 S. C., 181.

March 4, 1901.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.  This was an action

brought by the plaintiff against the defendant company to
recover the penalty imposed by statute upon a railroad com-
pany. for failing to construct and keep in repair adequate
stock guards or cattle gaps, at the points where the railroad
of the defendant company crosses the lines of certain fences,
alleged to belong to plaintiff, on a certain tract of land in
Barnwell County, of which the plaintiff is alleged to be the
owner.   The statutory provisions under which the action is
brought are found in secs. 1729 and 1730 of the Rev. Stat.
of 1898, and the allegation in the complaint is: "That this
plaintiff is the owner of a certain plantation or tract of land
situated in Barnwell County, through which this railroad
has been constructed, and which runs through his pasture,
crossing his pasture fence in four different places, destroying
the use of the same to him, and allowing his cattle to run at
large, without constructing or keeping in repair any adequate
stock or cattle guard or gap at every point where the line of
said railroad of said company crosses or may hereafter cross
the line of any fence in this State."   The defendant, by its
answer set up as its first defense a general denial of each and
every allegation contained in the complaint.

   The case came on for trial before his Honor, Judge
Townsend, and a jury at November term, 1899, and the jury
having found a verdict for the defendant, and judgment
having been entered on said verdict, the plaintiff appeals
upon the several grounds set out in the record, which,
together with the charge of the Circuit Judge, should be
incorporated by the Reporter in his report of the case.

   The undisputed testimony shows that on the 21st day of
September, 1898, the plaintiff and his wife executed a deed
to the defendant company by which they conveyed to the
said company, in consideration of the sum of $100, "all that
piece, parcel or strip of land lying, being and situate in the
county of Barnwell, State aforesaid, the same being 130 feet
wide and 2,573 feet long, more or less, extending through
and across my lands in said county, the exact location to be
determined by the said company * * * said strip of land is

bounded on the east by Lower Three Runs and the lands of
Dr. Allen Patterson, and on the west by lands of Richard
Cave." A copy of this deed is set out in the "Case," and
should likewise be incorporated by the Reporter in his report
of the case. This deed differs in no respect from an ordi-
nary deed in fee simple, with full conveyance of warranty,
except that immediately after the words above quoted, giving
the boundaries of the said strip of land, the following words
are inserted: "and the undersigned to fix. up the pasture
fences." Testimony was offered tending to show what
passed between the parties before the deed was executed,
which, in many instancs, was objected to, and the objection
was sustained. Some of this testimony, however, was not
objected to at the time it was offered, and one of the wit-
nesses for the defense, R. J. Latta, was allowed to testify,
without objection, that he was with another witness, A. J.
Galloway, who was the agent of the defendant company,
charged with the duty of obtaining rights of way, when Gal-
loway first met the plaintiff, on the day before the deed was
signed; and he said, amongst other things, that he heard
Galloway make the plaintiff an offer——the amount of which
he did not remember——which the plaintiff refused, "because
he said he would have to have more, he would have his fences
to fix." And Galloway, whose testimony was taken by the
master out of Court, said: "It was my purpose not to pay
one land owner more than another, where the damages were
about the same, for the right of way; and in order that we
might arrange a uniform price, Mr. Alfred Aldrich pre-
ceded me on the line, and found about what would be the
cost of right of ways; and on his estimate the right of way
over the land of H. P. Anderson would be $55. I paid him
$100, which was to relieve us, as I said before, of any further
expenses relating to fences." It is true, that there was a
motion afterwards to strike out the testimony of Latta above
referred to; but after some colloquy between the counsel and
the Court, and after hearing the testimony of Latta read by
the stenographer, the motion was withdrawn. It was still

insisted that Galloway's testimony was objected to at the time it was taken; whereupon the Court ruled as follows: "The Court orders certain testimony of Mr. Galloway stricken out, and designates the portion which should be stricken out;" but the testimony of Galloway as printed in the "Case" does not designate what portion should be stricken out, and only shows that certain portions of it are noted as objected to; and to that portion of it which we have copied above there is no note of any objection. Inasmuch, however, as there seems to be some confusion about what particular testimony of Galloway was ordered to be stricken out, we may say that, under the view which we take, it is immaterial whether all or any of it was ruled out.

Under our view, the controlling question in the case is, whether the statutory provisions above referred to are applicable to the case, under the undisputed testimony. In other words, whether a railroad company which has constructed its road through its own land, to which it has acquired a fee simple title by a conveyance from the former owner, can be required to construct and keep in repair adequate stock guards or cattle gaps at every point where its track crosses the line of a fence which such previous owner had built for his own convenience before he parted with the title to the land on which such fence was built. The statute under which this action is brought reads as follows: "Sec. 1729. The several railroad companies whose line of road lies wholly or partly in this State are hereby required to construct and keep in good repair an adequate stock guard or cattle gap at every point where the line of said railroad of any such company crosses, or may hereafter cross, the line of any fence in this State." "Sec. 1730. For every violation of the preceding section, the railroad company so violating shall pay to the owner or owners of the fence upon the line of which such stock guards or cattle gap should have been constructed and kept in repair, the sum of $100, to be recovered by action in the Court of Common Pleas for the county in which such stock guard or cattle gap should

have been constructed and kept in repair." It is very mani-
fest that these two sections must be read together, as the one
is but the complement of the other. Looking at the former
alone, it is very clear that a right of action for the breach of
duty imposed upon a railroad company is not conferred upon
any one. We must, therefore, look to the provision of sec.
1730 in order to ascertain what is the penalty prescribed for
the violation of the provisions of the preceding sections, and
to whom such penalty shall be paid. There it is very plainly
provided that such penalty shall be paid "to the owner or
owners of the fence upon the line of which such stock guard
or cattle gap should have been constructed," and he or they,
if more than one, alone, can bring an action for the recovery
of the same. Now, in this case the undisputed testimony
shows that, before the defendant company commenced the
construction of its railroad, and before the fences which
crossed its track were torn down or in any way interfered
with, the said company had acquired the absolute fee simple
title *to the land* upon which such fences had previously been
built, by the former owner of the land, and had thereby
acquired the absolute right to such fences; for it will
scarcely be denied that where one purchases a piece of land
and obtains a title to the same, he also acquires the right to
any buildings, fences or other structures then upon the land,
unless there is a reservation in the conveyance by the grantor
of his right to the same—and there is no such reservation in
the deed by which the defendant company acquired title to
the land through which the railroad was constructed. So
that the plaintiff was not the owner of any fence, the line of
which was crossed by the railroad track of defendant, and,
therefore, could not maintain an action for the recovery of
the penalty prescribed by the statutory provisions upon which
the plaintiff's action is confessedly based.

It would have been very different if the defendant com-
pany had acquired merely a *right of way* over the land
through which the railroad was constructed, either by agree-
ment with the land owner, or by condemnation proceedings,

or in any other way. For in such case the defendant company would have no title whatever *to the land,* but would simply have acquired a right of way over the land of the plaintiff—a mere easement—which it could only use for the purposes of its railroad, leaving the title to the land in the plaintiff. In such a case the statutory provisions relied on would have had their full application; and if the defendant had failed to comply with the provisions of the statute, the plaintiff would have had his right of action for the recovery of the penalty imposed. But that is not the case made here. When the plaintiff learned that the defendant proposed to build its railroad through his land, he had an option to pursue either one of three courses: 1st. He might by agreement with the defendant company have conveyed to it a mere right of way through his land, by which he would have preserved the right which he is now claiming; or 2d. He might have forced the defendant company to resort to condemnation proceedings in order to obtain the right of way, which also would have preserved the right which he is now claiming; or, 3d. He might, as he did do, sell and convey a certain portion of his land, of specified dimensions, to the defendant company. It is conceded that he voluntarily adopted the third alternative, and he must take the consequences of his own act. Suppose he had sold and conveyed to some neighbor, or other third person, the same land which he sold and conveyed to the defendant company by the same kind of deed, containing no reservations whatever, could it, for a moment, be contended that he still retained any right of any kind in the land, or to the fences or other structures which may have been upon the land at the time such conveyance was made. Why, then, does a railroad company stand in any worse position? The statute contains no hint or suggestion that the legislature intended that, under the same circumstances, one rule should apply in the case of a private individual; and another in the case of a railroad company. Indeed, if anything, it seems to imply the contrary; for when it provides that the penalty shall be paid to the owner of the

fence, it seems to imply that it was intended that the statute should apply only where the ownership of the property remained in the former proprietor, and the railroad had acquired only the right of way, a mere easement. There may be, and probably is, very good reason why the legislature should make such a provision as that found in the statutory provisions relied on, where a railroad company has been permitted, by the exercise of the right of eminent domain, to acquire a right of way over the land of another, or has in any other way acquired such right of way, for the protection of the rights and convenience of the land owner, as far as may be consistent with the enjoyment of such easement. But we can conceive of no reason why the legislature should undertake to make such a provision in favor of a land owner who has voluntarily chosen to sell and convey a portion of his land to a railroad company for the purposes of its road, without making any provision for protecting himself from any inconvenience, loss or injury which might result from such absolute sale and conveyance. To use an illustration suggested by counsel for respondent in his argument: Suppose the defendant company should have seen fit, or should hereafter see fit, to establish a station at the point where the railroad track crosses the line where plaintiff's pasture fences formerly stood; build depots, eating houses, and also sell off lots within the lines of its own lands, with a view to encourage the building up of a town, what would then become of the right which the plaintiff is now claiming, if the company did so, and surely its right to do so could not be questioned, for it has just the same right to use land to which it has acquired the fee simple title as any other landed proprietor has to use his own land. These and other considerations, which might be suggested, are quite sufficient to show that the provisions of the sections above referred to do not apply, and were not intended to apply to a case like this.

We do not think, therefore, that there was any error on the part of the Circuit Judge in the instructions which he gave to the jury upon this point, and all the exceptions

raising the questions as we have stated it above, must be overruled.

This is conclusive of the case, and we need not consider the points made by any of the other exceptions, as we do not regard them as material to the case as made by the undisputed testimony.

It will be observed that we lay no stress whatever upon the language above quoted from the deed—"and the undersigned to fix up the pasture fences"—for several reasons. In the first place, under the view which we have taken, we do not consider those words material; for they certainly do not purport to impose any duty whatsoever upon the defendant company; but, on the contrary, they do purport to impose some duty upon the plaintiff. In the next place, we do not exactly understand what was the intention of the parties in inserting those words. They are certainly ambiguous, and the parol testimony offered to explain what the parties really meant was rejected— whether rightfully or not, is not made a question in this case. We may say, however, that they purport to impose some duty upon the plaintiff, but what it was is not clear. But, as we have said, we do not regard those words as material, or in any way affecting the conclusions which we have reached.

The counsel for appellant has cited several cases from other States, none of which seems to be applicable to the view which we have taken, so far as we can perceive from the statement made of them in the argument. For example, the case of *Poler* v. *N. Y. Central R. R. Co.,* 16 N. Y., 476, is represented to hold, "that a company acquiring the right of way by private grant is not released from its statutory obligations as to fencing, &c., even though nothing is said of it in the deed." We have no fault to find with that decision as thus stated, for it will be seen in what we have said above, that we concede that where a railroad company acquires a *right of way* by a grant or deed, that the provisions of our statute do apply; but we

contend that where a railroad company acquires an absolute fee simple title to *the land* through which its road is constructed, the statute does not apply for the reasons given above. The other decisions cited from New York, and the case from Kentucky, seem to be of the same tenor, and, therefore, call for no further remark. It is difficult to conceive what possible application the case of *St. Louis R. R. Co.* v. *Morris,* 35 Ark., 622, which is represented as holding that "a grant of right of way gives no license to overflow grantor's land, by the unskillful construction of a levee," can have to the case under consideration; so, also, the case of *Missouri R. R. Co.* v. *Morrow,* 32 Kansas, 217, and the case of *Heskett* v. *Wabash R. R. Co.,* 61 Iowa, 467, seem to relate only to questions as to what constitutes a sufficient cattle guard, whether it is the duty of the company owning the railroad or its lessee to construct cattle guards, and how far the cattle guard shall be constructed beyond the railroad track; and none of these questions arise in our case, for the obvious reason that no cattle guards of any kind have ever been constructed. Besides, these cases from other States are not binding on us; and in the absence of any decision of our own, we have rested our conclusion upon the construction of the terms of our own statute.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.